IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| OLIN NOVELLA ANDREWS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:17cv87-WC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Olin Novella Andrews, III ("Plaintiff") filed an application for disability insurance

benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*., on

January 15, 2014, alleging disability beginning on November 1, 1998. After Plaintiff's

application for benefits was denied at the initial administrative level, Plaintiff requested

and received a hearing before an Administrative Law Judge ("ALJ"). A hearing was held

on March 2, 2015. Following the hearing, the ALJ issued a decision finding Plaintiff had

not been under a disability, as defined in the Social Security Act, from November 1, 1998,

through the date Plaintiff was last insured on December 31, 2003. Plaintiff appealed to the

Appeals Council on October 2, 2015, and the Appeals Council denied review.

Accordingly, the ALJ's decision consequently became the final decision of the

Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 4); Def.'s Consent to Jurisdiction (Doc. 5). Based on the court's review of the record and the briefs of the parties, the court REVERSES the decision of the Commissioner and REMANDS the matter for further proceedings.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(5) Is the person unable to perform any other work within the economy? An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a prima facie case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE"). *Id.* at 1239-40.

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

[4] *See* 20 C.F.R. pt. 404 Subpt. P, app. 2.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 54 years old on the date of the hearing before the ALJ, and had obtained a master's degree in business administration. Tr. 70-71, 72. His prior work was as a controller for a company owned by his father until the company went out of business in November 1998. Tr. 72. Plaintiff then assisted another company owned by his father, a local newspaper called *Tidbits*, by delivering papers. Tr. 71, 82. Plaintiff did not receive a salary for assisting his father at *Tidbits*. Tr. 82. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity during the period from his alleged onset date of November 1, 1998[,] through the date last insured of December 31, 2003[.]" Tr. 53. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "history of Panic Disorder and Schizophrenia; depression; history of substance abuse; aortic valve replacement; cerebrovascular accident (CVA); and Chronic Obstructive Pulmonary Disease (COPD)[.]" Tr. 53. At Step Three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed" in the Social Security Act. Tr. 53. Next, at Step Four, the ALJ articulated Plaintiff's RFC, stating Plaintiff:

> has the residual functional capacity to perform a range of 'light work,' as that term is otherwise defined in 20 CFR 404.1567(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently. He can push and pull within those same exertional limits. He can stand or walk about 6 hours and can sit for at least 6 hours out of an 8-hour workday. The claimant can understand and carry out short, simple instructions consistent with the performance of simple, unskilled work of a routine, repetitive nature. He can make simple, work-related decisions, but cannot carry out complex instructions, cannot engage in long-term planning, negotiation, or

independent goal-setting. He can tolerate occasional interaction with supervisors and co-workers, and no more than superficial interaction with members of the general public. He can tolerate minor, infrequent changes within the workplace.

Tr. 54. Having consulted with a VE at the hearing, the ALJ concluded that Plaintiff has no past relevant work. At Step Five, the ALJ determined that, "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed[.]" Tr. 58. These jobs included those of a hand packager/inspector; wire worker; and small products assembler. Tr. 58. Finally, based upon the testimony of the VE, the ALJ determined that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from November 1, 1998, the alleged onset date, through December 31, 2003, the date last insured[.]" Tr. 59.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff presents five issues for the court to consider in its review of the Commissioner's decision. One of the issues is whether the ALJ's finding of Plaintiff's RFC is based upon substantial evidence. Doc. 13 at 1. Because that issue is dispositive, the undersigned will address it alone.

## V.   DISCUSSION

### A.   Whether the ALJ's finding of Plaintiff's RFC is based on substantial evidence.

Plaintiff argues that the ALJ's finding of his RFC is not based on substantial evidence because the ALJ failed to place any non-exertional limitation or environmental limitation on Plaintiff, despite the fact that Plaintiff was receiving Coumadin therapy. Doc.

13 at 12-15. Plaintiff asserts that, because Coumadin is a medicine that makes a person's blood less likely to form clots, "[a] reasonable person would preclude an individual who required blood thinners from working around unprotected heights, dangerous machinery or hazardous conditions." *Id*. at 14. Thus, Plaintiff argues, because the ALJ failed to include any limitations based upon his use of Coumadin within his RFC, the ALJ erred.

The Commissioner responds that the ALJ's RFC finding was supported by substantial evidence even though it did not include the limitations Plaintiff requests. Doc. 16 at 15-16. Specifically, the Commissioner argues that "the jobs the ALJ found Plaintiff could perform do not require work in hazardous conditions[.]" *Id*. at 16. "Thus, any failure by the ALJ to include such limitations in his RFC finding is harmless." *Id*.

In a four-page reply to the Commissioner's response, Plaintiff argues that the ALJ's failure to include the above-listed or similar limitations was not harmless. Doc. 20. Indeed, Plaintiff asserts, that, according to Eleventh Circuit caselaw, "[b]y not including the above limitations in the hypothetical to the VE, the VE's testimony cannot constitute substantial evidence by which to uphold the ALJ's decision." *Id*. at 2. Plaintiff further notes that, to the extent this court may evaluate the requirements of the jobs proposed by the VE to determine whether they may be performed by an individual taking Coumadin, at least two of them involve cutting metal and wires, which would be hazardous to a person on blood thinners. *Id*. at 2-3. Therefore, Plaintiff maintains the ALJ erred.

It is clear that, within the Eleventh Circuit, when a VE is utilized at the fifth step in the sequential process, the hypothetical question posed to him must include *all* impairments of the claimant. *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985); *Jones v. Astrue*,

No. 3:09-cv-431-J-25TEM, 2010 WL 3603933, at *10 (M.D. Fla. Sept. 9, 2010). If the hypothetical does not include all of the impairments of a claimant, the ALJ's RFC is not supported by substantial evidence. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constituted substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (citing generally *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)). With regards to medication, it is conceivable that a claimant's use of certain medications may contribute to his disability because of the side effects of those medications. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Under certain circumstances, then, an ALJ has a duty to investigate the possible side-effects of medications taken by a claimant and to consider those side effects when determining a claimant's RFC. *Compare Cowart v. Schweiker,* 662 F.2d 731, 737 (11th Cir. 1981) (concluding that the ALJ failed to fully develop the record where a *pro se* claimant testified that she took eight different prescription medications and was "kind of zonked most of the time" and the ALJ failed to either elicit testimony or make findings regarding the effect of the medications on her ability to work), *with Passopulos v. Sullivan,* 976 F.2d 642, 648 (11th Cir. 1992) (concluding that ALJ did not fail to develop the record where the claimant did not present evidence he was taking medication that caused side effects), *and Cherry v. Heckler,* 760 F.2d 1186, 1191 n. 7 (11th Cir. 1985) (concluding that the Commissioner, upon reopening, did not have a duty to further investigate side effects of a counseled claimant's medications where claimant did not allege that side effects contributed to her disability and stated only that her medication made her drowsy). If, based upon the hypothetical question posed to

the VE, the ALJ determines that a claimant may perform work despite his limitations—including those limitations that may arise from the use of certain medications—the burden then shifts to the claimant to demonstrate that he is unable to perform the jobs set forth by the ALJ. *Williams v. Barnhart*, 140 F. App'x 932, 936 (11th Cir. 2005) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004)).

Here, the record reflects that Plaintiff had been taking Coumadin since 1991. Tr. 254, 256, 260, 265-80, 284, 286, 298. Although sparse, the record also contains evidence that because Plaintiff's use of Coumadin makes his blood "less likely to clot," he should "avoid activities with a high risk of injury"; not go barefoot; use an electric razor instead of a manual one; and use a soft-bristled toothbrush and waxed floss.[5] Tr. 315. The record also indicates that, while taking Coumadin, Plaintiff should be vigilant about the possible side effects of the medication—including increased bruising, prolonged bleeding, bleeding from the nose or gums, etc.—and to, once again, "[a]void activities with a high risk of injury" as a "serious blow to the head" could cause bleeding around the brain. Tr. 316, 317. Despite these serious side effects and warnings associated with use of Coumadin, Plaintiff reported that he experienced no side effects from taking Coumadin in a self-completed disability report to the SSA in January 2014. Tr. 219. Thus, the first question the undersigned must answer is whether, based upon the record before the ALJ, the ALJ should have considered the side effects and warnings of Coumadin in formulating Plaintiff's RFC and restricted Plaintiff accordingly.

---

[5] This evidence appears on a discharge document from Plaintiff's visit to East Alabama Medical Center on November 16, 2013. Tr. 312.

The undersigned concludes that, despite Plaintiff's failure to report experiencing any "side effects" from Coumadin, there was sufficient evidence before the ALJ to trigger a need to restrict Plaintiff's RFC based upon the side effects and warnings of Coumadin. Notably, the ALJ did not restrict Plaintiff—even implicitly—from working around dangerous machinery, hazardous conditions, or unprotected heights. The undersigned finds that such restrictions would be necessary for an individual that *could* experience uncontrolled bleeding from the use of blood thinners even though such an individual has, thankfully, not yet experienced those side effects. Therefore, the ALJ should have included appropriate restrictions for Plaintiff when articulating his RFC based upon his use of Coumadin.

Although authority on the exact question before the undersigned is sparse, it does appear that ALJs in other cases have found it necessary to restrict individuals on blood thinners from performing hazardous work or working around unprotected heights within their RFCs. *See Finnie v. Berryhill*, Civil Action No. 1:16-CV-02659-AT-LTW, 2018 WL 1190241, at *2 (N.D. Ga. Feb. 20, 2018) (restricting the plaintiff, who was prescribed a blood thinner medication, from exposure to hazardous machinery and unprotected heights); *McMullen v. Colvin*, Case No. 3:16-CV-862, 2017 WL 372236, at *12 (M.D. Penn. Jan. 25, 2017) (noting that the "ALJ had acknowledged in his RFC determination that Plaintiff's dependence on blood thinners had precluded his work at heights or around moving mechanical parts"); *Cranfill v. Colvin*, No. 1:10CV925, 2013 WL 1736597, at * 3 (M.D. N.C. April 9, 2013) (observing that the plaintiff was being treated with "blood thinners and [for] depression, and that these conditions would limit one to unskilled, simple, routine,

repetitive work in a low stress environment with limited contact with others . . . and no hazardous equipment or unprotected heights"); *Henderson v. Comm'r of Soc. Sec.*, No. 6:11-cv-1559-Orl-GJK, 2013 WL 764785, at *7 (M.D. Fla. Feb. 28, 2013) (precluding the plaintiff, who was taking blood thinners, from working around unprotected heights, driving motorized vehicles, and working around moving and hazardous machinery within her RFC); *Jones v. Astrue*, No. 3:09-cv-431-J-25TEM, 2010 WL 3603933, at *2 (M.D. Fla. Sept. 9, 2010) (noting that the plaintiff, who was taking blood thinners, was restricted in his RFC to no "activities at unprotected heights" and "no work that involves sharp instruments"). Without delving into a deep analysis of the evidence before the ALJs in those cases that triggered the ALJ's duty to include limitations within the claimants' RFCs because of their use of blood thinners, the undersigned finds that there is enough evidence in this case to conclude that Plaintiff's RFC should have been restricted because of his use of Coumadin. In making this conclusion, the undersigned specifically points to the evidence in the record discussed above that warned Plaintiff of activities that he should avoid and advised Plaintiff of certain symptoms that might indicate he is experiencing a negative side effect of his medication. As a result of the ALJ's failure to include limitations in Plaintiff's RFC based upon his use of Coumadin, the undersigned concludes that the ALJ failed to articulate a hypothetical to the VE that encompassed all of Plaintiff's impairments.[6] As such, the undersigned must determine whether that failure constitutes reversible error.

---

[6] The undersigned does not find persuasive the Commissioner's argument that Plaintiff's proposed restrictions are not *side effects* of Coumadin, but instead are *precautions* when taking Coumadin, and are thus inapplicable to the case law cited by Plaintiff regarding the need for the ALJ to consider the side effects

In *Dial v. Commissioner of Social Security*, the Eleventh Circuit determined that, when an ALJ chooses to rely upon the testimony of a VE and not upon the Dictionary of Occupational Titles ("DOT"), and when such testimony is based upon a hypothetical from the ALJ that does not include all of the claimant's limitations, a reviewing court cannot say that the ALJ's error was harmless. 403 F. App'x 420, 420 (11th Cir. 2010). In so holding, the *Dial* court reasoned:

> In this case, the [ALJ] denied Dial's application on the ground that he could perform his past relevant work and other jobs in the regional economy. In reaching this conclusion, the ALJ relied exclusively on the testimony of a [VE]. However, it is undisputed that the ALJ failed to include all of Dial's employment limitations in the hypothetical questions posed to the VE. Thus, the VE's testimony did not constitute substantial evidence upon which the ALJ could rely.

> Nonetheless, the district court found, and the Commissioner contends, that this error was harmless because, according to the job descriptions contained in the [DOT], Dial's past relevant work and other jobs in the regional economy would not require him to perform duties inconsistent with his employment limitations. *However, while the ALJ could have chosen to rely on the DOT, he instead relied only on the testimony of the VE, who was not instructed on all of Dial's limitations. Thus, we cannot say that the ALJ's error was harmless.*

*Id.* (internal citations omitted) (emphasis added).

---

of Plaintiff's medications when formulating Plaintiff's RFC. Indeed, the argument seems to be one of mere semantics. First, the undersigned would note that the evidence in the record *warned* Plaintiff to avoid certain kinds of activities, particularly ones that could lead to an injury involving blood loss. Tr.315-17. Such a warning was clearly important for Plaintiff in order to *prevent* the possible side effects of Coumadin, which could cause Plaintiff to experience a bleed that is, at the least, difficult to control. If the distinction the Commissioner advances were to be adopted, a claimant would need to have experienced an actual bleeding event in order for the ALJ to be required to restrict the claimant from certain activities. That argument is nonsensical, particularly considering the purpose of Coumadin is to prevent blood from clotting. Simply because a claimant has not experienced an unintended side effect of Coumadin does not mean that the ALJ should not consider, if there is evidence in the record to document the potential effects of the drug, the possible side effects—experienced or not—of the medication when formulating a claimant's RFC.

Similarly, here, the ALJ relied upon the VE's testimony to conclude that there was a significant number of jobs in the economy that Plaintiff could perform. The ALJ did not rely upon the DOT.[7] According to *Dial*, the undersigned, therefore, may not conclude that the ALJ's error was harmless in this case because the ALJ relied upon the VE's testimony, which was based upon an incomplete hypothetical of Plaintiff's limitations.

The Commissioner argues to the contrary. The Commissioner asserts that the ALJ's failure to include the limitations proposed by Plaintiff was harmless and, for support, primarily relies upon *Williams v. Barnhart*. In that case, the Eleventh Circuit ultimately determined that, even though the ALJ's hypothetical did not include certain limitations proposed by Williams, the failure to include those limitations did not constitute reversible error. 140 F. App'x at 936-37. Specifically, Williams argued that the hypothetical posed to the VE did not include: (1) that he read at a fourth grade level; (2) that he is borderline retarded; (3) the frequency that he needs to alternate sitting and standing; and (4) any reference to pain. *Id*. at 936. In addressing each argument, the *Williams* court determined that the ALJ's hypothetical implicitly included limitations regarding the need for Williams to alternate sitting and standing, as well as Williams's pain. *Id*. at 936-37. As to Williams's argument regarding his ability to read at the fourth grade level, the Circuit court determined that because (1) the SSA defined a fourth-grade reading level to be a marginal education,

---

[7] Notably, the ALJ stated that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*." Tr. 58. However, this statement does not mean that the ALJ *relied* upon the DOT; instead, it means that the ALJ *confirmed* that the "[o]ccupational evidence provided by [the] VE . . . [was] consistent with the occupational information supplied by the DOT." *See Policy Interpretation Ruling: Titles II and XBI: Use of Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, SSR 00-4p, 2000 WL 1898704, at *2.

(2) the SSA provides that an individual with a marginal education is capable of doing unskilled jobs; and (3) the VE identified only jobs that were unskilled, any failure to include this limitation was harmless because it would not have altered the testimony of the VE. *Id*. at 936. Finally, as to Williams's argument that his RFC should have included that he is borderline retarded, the Circuit court determined that Williams "failed to show that the omission would have changed the testimony of the vocational expert." *Id*. Thus, the *Williams* court held that the ALJ's failure to include Williams's proposed limitations within his RFC was not reversible error.

Here, the situation is different. First, the undersigned cannot conclude, like the *Williams* court, that the hypothetical posed by the ALJ included any limitations—express or implied—that would encompass the restrictions needed for Plaintiff's use of Coumadin—i.e., restrictions for use of hazardous machinery, sharp objects, unprotected heights, or the like. Second, the undersigned cannot conclude, like the *Williams* court, that the testimony of the VE would not be different had the VE been apprised of those or similar restrictions regarding Plaintiff's use of blood thinners. Indeed, according to Plaintiff's argument, at least two of the jobs proposed by the VE specifically require the use of power tools and machinery, or involve cutting metal and twisting wire. Doc. 20 at 2-3. Such requirements could undoubtedly pose a danger to someone who is using blood thinners if that individual cut himself on the job.[8] Finally, the undersigned cannot conclude, like the

---

[8] To be sure, Plaintiff does not point out any specific restrictions for the third job proposed by the VE—that of hand packager/inspector—that would be considered hazardous, thereby preventing Plaintiff from engaging in that type of employment. However, it is not the job of this court to determine whether that employment would be permissible considering *all* of Plaintiff's restrictions. Instead, that is the job of the

*Williams* court, that Plaintiff has "failed to show that the omission [of the proposed restrictions] would have changed the testimony of the vocational expert." *See Williams*, 140 F. App'x at 936. Indeed, Plaintiff has provided evidence that the record before the ALJ contained information that Plaintiff was using Coumadin since 1991 (Tr. 254, 256, 260, 265-80, 284, 286, 298), as well as evidence that Plaintiff should specifically "avoid activities with a high risk of injury" and not to use a regular razor or go barefoot (Tr. 315). Sensibly, Plaintiff argues that an individual who should avoid those activities should also avoid activities like those required in the jobs listed by the VE because they involve a "high risk of injury." Doc. 20 at 2-3. Thus, the undersigned finds that, unlike Williams, Plaintiff has sufficiently argued, by pointing to evidence in the record before the ALJ, that that ALJ's omission of certain restrictions would likely have changed the testimony of the VE.

In summary, the undersigned finds that the ALJ failed to consider the side effects of Plaintiff's Coumadin medication when articulating Plaintiff's RFC despite sufficient evidence in the record to support additional limitations. Because the hypothetical to the VE did not include all of Plaintiff's limitations, the VE's testimony did not constitute substantial evidence upon which the ALJ could rely. Further, as set forth in *Dial*, the undersigned finds that this error was not harmless because, in making his determination that Plaintiff was not disabled as defined by the Social Security Act, the ALJ relied upon the testimony of the VE and determined there were jobs in the economy that Plaintiff could perform. Thus, the undersigned concludes that substantial evidence does not support the

ALJ through testimony from a VE who has been presented with an RFC that contains all of a claimant's limitations.

ALJ's decision and that the case should be reversed and remanded for further consideration. Upon remand, the ALJ should specifically address the side effects of Coumadin within Plaintiff's RFC.

**B.    The Undersigned Will Not Address Plaintiff's Remaining Arguments.**

Because the undersigned concludes that the ALJ committed reversible error in failing to include all of Plaintiff's limitations within his RFC, the undersigned will not address Plaintiff's remaining arguments.

## VI.    CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this matter is REMANDED back to the Commissioner. A separate judgment will issue.

Done this 25th day of April, 2018.


/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE